**Phillip D. SORENSON; et al., Plaintiffs,**

**v.**

**Kevin CONCANNON, Director of the Department of Human Resources; et al., Defendants.**

**No. CIV. 94–874–JO.**

United States District Court, D. Oregon.

Sept. 20, 2001.

N. Robert Stoll, Timothy S. DeJong, Stoll Stoll Berne Lokting & Shlachter, Portland, OR, Timothy P. Baxter, Stephen C. Kanaga, Lane County Law & Advocacy Center, Eugene, OR, Kathleen L. Wilde, Oregon Advocacy Center, Portland, OR, Richard C. Baldwin, Legal Aid Services of Oregon, Portland, OR, Susan Hogg, Newport, OR, Lorey H. Freeman, Oregon Law Center, Portland, OR, for Plaintiffs.

Gregory A. Chaimov, Assistant Attorney General, Department of Justice, Salem, OR, Stephen K. Bushong, Department of Justice, Salem, OR, Lori Hyman, U.S. Department of Justice, Federal Programs Branch, Washington, DC, Craig J. Casey, Assistant United States Attorney, District of Oregon, United States Attorney's Office, Portland, OR, Susan K. Ullman, U.S. Department of Justice, Civil Division, Washington, DC, for Defendants.

ROBERT E. JONES, District Judge:

In February 1999, after eight years of sustained litigation, plaintiffs' class action challenge to the Oregon disability determination system yielded a comprehensive settlement between plaintiffs, the state of Oregon ("state defendant"), and the United States ("federal defendant"). Shortly thereafter, plaintiffs sought nearly $1.5 million in attorney fees covering more than 8,000 hours incurred by at least 10 attorneys. Based the materials supporting the fee request and following a hearing, on May 5, 1999, I awarded plaintiffs' counsel $982,531.08 in attorney fees, $6,900 in miscellaneous paralegal and law clerk time, and $46,759.72 in costs. The award reflected my belief that the settlement would vastly improve the disability determination system.

The federal defendant, not satisfied with the fee award, appealed the order. Plaintiffs then cross-appealed. The state defendant did not participate in the appeal. In an opinion issued February 13, 2001, the Ninth Circuit affirmed in part, reversed in part, and remanded the attorney fee petition for further proceedings. *See Sorenson v. Mink,* 239 F.3d 1140 (9th Cir.2001). I then ordered plaintiffs' counsel to submit revised fee requests and supporting materials sufficient to permit the analysis the Ninth Circuit required.

Plaintiffs and the federal defendant[1] have filed their materials. Consequently, this case is now before the court on plaintiffs' motion for attorney fees on remand (# 260). For the reasons stated below, I find that plaintiffs are entitled to $1,221,009.30 in attorney fees, $46,759.72 in costs, and post-judgment interest at the rate of 4.727 percent from May 6, 1999, through April 6, 2001.

## DISCUSSION

1. *The Ninth Circuit Opinion*

As pertinent to the present proceeding, the Ninth Circuit directed this court to refine the fee analysis in two areas, calculation of hours "reasonably expended," and

---

**1.** The state defendant has not responded to plaintiffs' revised fee request on remand.

calculation of reimbursement rates. With respect to the determination of hours "reasonably expended," the Ninth Circuit required (a) a finding concerning the number of hours that are "documented inadequately and reflect duplicative efforts and excessive staffing"; (b) a finding as to which lawyers billed those hours; and (c) deduction of those hours from the total "reasonably expended" on this action. *Sorenson,* 239 F.3d at 1147.

With respect to reimbursement rates (and as explained more fully below), the Ninth Circuit directed this court to (a) determine which hours were "state hours" and which hours were "federal hours"; (b) determine the historical and adjusted attorney fee rates under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, over the past 10 years and then apply those rates to the federal hours; and (c) apply market rates to the state hours under 42 U.S.C. § 1988.

Finally, the Ninth Circuit affirmed my finding that the plaintiffs had achieved an excellent result and should, therefore, be fully compensated. That finding stands on remand.

2. *Hours Reasonably Expended.*

a. *Inadequate Documentation*

In my May 5, 1999, order, I expressed frustration with the quality of plaintiffs' supporting documentation, stating that "portions of the fee request are documented inadequately and reflect duplicative efforts and excessive staffing." *Sorenson v. Mink,* Civil No. 94–874 (Order, May 5, 1999), p. 3. The Ninth Circuit has required greater detail concerning that statement. Fortunately, the parties somewhat simplified the process by agreeing to reductions in certain attorneys' time. Specifically, plaintiffs have proposed, and the federal

defendant has accepted, the following reductions in two attorneys' time:

Tim Baxter 70.9 hours

Kent Thurber 86.0 hours

■ The federal defendant challenges Steve Kanaga's time, arguing that poor record-keeping justifies an overall 50 percent reduction. While I agree with defendant that Kanaga's initial documentation was inadequate, his reconstructed and revised materials contain, for the most part, sufficient detail. *See Davis v. City and County of San Francisco,* 976 F.2d 1536, 1542 (9th Cir.1992)(district court did not abuse discretion in basing fee award in part on reconstructed time records), *vacated in part,* 984 F.2d 345 (9th Cir.1993). I have carefully reviewed each of Kanaga's time entries, and find only 15.25 hours to be inadequately documented. I do, however, agree with the federal defendant that Kanaga should not be compensated for time reconstructing his records, for which he billed 49.25 hours. Had he documented his hours properly the first time, the additional hours would not have been necessary. The attorney fee award compensates him for his original efforts in 1999; he will not be compensated twice for what, in essence, is the same work.

The federal defendant has not specifically challenged any other attorney's time records as inadequately documented. I nonetheless reviewed each attorney's individual time entries for the entire period of this litigation. That review revealed that, for the most part, the time is adequately documented, and I can find no reasoned basis on which to reduce those hours,[2] with two exceptions. First, Peter James reduced his own time by 60.7 hours, which I accept as appropriate. Second, although Ira Zarov submitted affidavits concerning his involvement in this litigation, the sup-

---

2. My close scrutiny of the time records and counsel's affidavits has also convinced me

that no reduction is required for "duplicative efforts" or "excessive staffing."

porting documentation referenced in his affidavits is not attached in the official court file, the chambers files, or in any of the copies submitted on remand. Consequently, all of Zarov's claimed 46 hours must be disqualified.

The above reductions will be taken into account in the calculations set forth below.

### b. *Travel Time and Team Meetings*

█ The federal defendant challenges plaintiffs' travel and team meeting time as not reasonably expended in the litigation. I have thoroughly reviewed the entries that reflect travel and meeting time, and conclude that although substantial, the time spent in these activities was justified by the nature of this litigation. This was a state-wide class action, challenging the state-wide disability determination system. The attorneys were scattered from Eugene through Portland, and the witnesses were scattered even farther. The regular meetings between counsel were necessitated by the division of labor among them, their need to share information, and the location of documents produced by the defendants during discovery. Rather than being wasteful, as the federal defendant suggests, it appears from plaintiffs' affidavits that the meetings and associated travel were an efficient means of coordinating litigation efforts. Consequently, I decline to make the across-the-board reduction defendant requests.

### c. *Clerical Work*

█ The federal defendant asserts that Lorey Freeman, Timothy Baxter, and Peter James impermissibly included mere clerical tasks in their fee requests. The total "clerical time" defendant attributes to each is as follows:

| | |
|---|---|
| Freeman | 225.25 hours |
| Baxter | 177.1 hours |
| James | 1.0 hour |

Plaintiffs, in turn, deny that they seek any compensation for purely "clerical tasks." Additionally, they argue that although the federal defendant raised the issue in the Ninth Circuit, it was not addressed in that court's remand instructions.

Guessing what lies behind the language of a billing entry would require this court to engage in pure speculation. As a hypothetical example, suppose counsel billed time for "prepare trial notebook." Should I assume from that entry that counsel was organizing his or her thoughts, arguments, testimony, cross-examination, and evidence, or merely labeling divider pages? And if the task was, in fact, labeling divider pages, must I then assume that no substantive legal work or strategic analysis was involved? I do not think such assumptions are reasonable or required.

This was a document intensive case and included extensive sampling of files. By their very nature, many of the tasks counsel undertook related to the documents, *e.g.*, reviewing, organizing, preparing files for sampling, most easily can be described in "clerical" terminology for billing purposes. After all, an attorney's billing entry is merely a form of short-hand for the actual work performed.

I decline defendant's invitation to speculate concerning what each time entry really means. Moreover, plaintiffs point out that the time entries defendant challenges describe both substantive and clerical work, yet the federal defendant would have all of the time disqualified. Recognizing that some work (faxing, mailing, etc.) was purely clerical in nature, plaintiffs propose a $5,000 reduction, representing 25 hours of Freeman's and Baxter's time at their market rate of $200 per hour. I find plaintiffs' proposal to be reasonable

considering the time records as a whole. This amount will be subtracted from the total award, after all other calculations are made.[3]

### d. Time Spent in Unsuccessful Settlement Negotiations

 The federal defendant also objects to all time incurred in plaintiffs' earlier unsuccessful settlement negotiations with the state defendant, arguing that those efforts did not "materially advance this litigation" as required under the attorney fee provision of the final Settlement Agreement. The settlement negotiations at issue failed, at least in part, because the federal defendant did not participate.

Again, the federal defendant asks this court to assume, contrary to common sense, that the extensive settlement negotiations between plaintiffs and the state yielded nothing of use to the ultimate resolution of the litigation. I declined to make that assumption in my first attorney fee award, and decline to do so now. If the federal defendant intends this challenge as a "lack of success" argument, that argument is foreclosed by the federal defendant's unsuccessful appeal of that issue in the Ninth Circuit.

### e. Summary—Deducted Hours

Based on the above, I find that the following hours billed by the named attorneys are inadequately documented or otherwise disqualified from inclusion in the final fee award:

| | |
|---|---|
| Timothy Baxter: | 70.9 hours |
| Peter James: | 60.7 hours |
| Steve Kanaga: | 64.5 hours |
| Kent Thurber: | 86.0 hours |
| Ira Zarov: | 46.0 hours |

Additionally, as discussed above, $5,000 will be deducted from the final fee award.

### 3. State v. Federal Fees

In addition to requiring more detail on my analysis of hours reasonably expended, the Ninth Circuit also directed me to (a) make a finding as to which hours are "state hours" and which hours are "federal hours"; and (b) compensate those hours according to the appropriate billing rate, either EAJA rates (federal hours) or market rates (state hours). This I now undertake to do.

### a. State v. Federal Hours

The analysis of state v. federal hours is required because different statutes govern the fee award against each defendant. The fee award for "state hours" is governed by 42 U.S.C. § 1988, and is based on prevailing market rates. The fee award for "federal hours" is governed by the EAJA, which caps the reimbursement rate, as adjusted. See Sorenson, 239 F.3d at 1148.

I embark on my effort to distinguish state from federal hours without the benefit of useful assistance from the parties. In their initial attorney fee request, plaintiffs made no effort to segregate hours, arguing instead that all hours against both defendants should be reimbursed at market rates. Specifically, plaintiffs argued that "special factors" allowed this court to award market rates against both defendants. See Plaintiffs' Reply Memorandum in Support of Petition for Attorney Fees, p. 15.

The federal defendant, in turn, argued that all hours against both defendants should be reimbursed according to the capped rate of the EAJA, reasoning that

---

**3.** The reason for this is that I have no basis on which to attribute the time to any particular year, as would be required for purposes of the state v. federal hour analysis set forth below.

the state defendant acted under color of federal law for purposes of the federally-funded disability benefits program. *See* Federal Defendant's Memorandum in Opposition, p. 16. The federal defendant also clarified that it would pay any fee award against the state. *Id.* at p. 15 n. 8. For its part, the state defendant filed a one-sentence "me too" brief joining the federal defendant's argument.

In its opening brief on appeal, the federal defendant changed its position, arguing that this court had erred in failing to allocate responsibility for the fees between each defendant. In their cross-appeal, plaintiffs essentially agreed, arguing that this court erred in applying below-market rates to the portion of the fee award attributable to the state defendant.

Thus, the case returned to this court under instructions to make a finding "about which hours are 'state hours' and which are 'federal hours.'" *Sorenson,* 239 F.3d at 1150. With the hope of enlisting counsel's assistance in this difficult task, I asked counsel to submit revised requests for attorney fees "in accordance with the Ninth Circuit opinion issued this date." Letter, February 13, 2001. What I received in response is no more helpful than the initial submissions.

Instead of undertaking their own grueling analysis, plaintiffs now simply contend that 90 percent of their effort was directed to the state, leaving only 10 percent attributable to the federal defendant. Further, plaintiffs assert that all hours should be reimbursed at market rates, based on "special factors" analysis. The federal defendant, in turn, contends that I should allocate relative responsibility 28 percent state, 72 percent federal, based on each defendant's respective attorney time expended in the litigation.

Counsel's submission of generalities in lieu of a rational allocation of time between the two defendants serves to underscore the nearly impossible nature of the task assigned by the Ninth Circuit. Writing for the court in this very case, Judge Graber seemed to recognize that plaintiffs' claims were inextricably intertwined, commenting that

> Here, Plaintiffs' claims all were related. All focused on improving Oregon's disability determination system. They 'involve[d] a common core of facts' and were 'based on related legal theories.' * * * In such cases, '[m]uch of counsel's time will be devoted generally to the litigation as a whole.... Such a lawsuit cannot be viewed as a series of discrete claims.'

*Sorenson,* 239 F.3d at 1147 (*quoting Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).

■ Against that background, I now undertake to exercise my discretion in the allocation of hours. The parties more or less agree that the determinative factor in allocating attorney time is "the time expended by the plaintiff in pursuing each defendant." *Corder v. Gates,* 947 F.2d 374, 382 (9th Cir.1991). With the hope of following this guiding principle, I examined every pleading in this case, attempting to determine what purpose or goal it served, who filed it and what or who prompted the filing, what further proceedings it required, and the relative time involved. To the extent possible, I then categorized each discrete series of related pleadings as "state defendant," "federal defendant," or "both defendants." Then, I examined every attorney's billing records, charting (to the best of my ability to discern) what hours were dedicated by each attorney to each discrete episode in the history of this litigation.

That process took days, yielded another chart of largely useless information, and compelled me to conclude that it is not reasonably possible to allocate hours be-

tween the two defendants by this methodology. As the Ninth Circuit proclaimed, plaintiffs' claims "all were related." Realistically, that plaintiffs may have billed time for examining documents produced by the state does not mean that they did not use the documents or information to advance claims against the federal defendant. Conversely, that plaintiffs conducted extensive depositions of federal witnesses does not mean that the information discovered was relevant only to the federal claims. Indeed, my review of all the pleadings in this case served only to further underscore what the Ninth Circuit recognized but then seemed to overlook, that plaintiffs' claims were too intertwined to be segregated into discrete claims.

Thus, I conclude that allocation cannot be based on time spent on motions, discovery, conferences, court hearings, or other activities. I will, therefore, exercise my discretion to allocate hours on a percentage basis. I do not, however, accept either parties' proposed percentages. Moreover, as explained below, I do not agree with plaintiffs that they are entitled to the same percentage allocation for all phases of the litigation.

■ With respect to the initial phase of the litigation—from before commencement through my original order on May 5, 1999—I find that the appropriate allocation of time is 65 percent state, 35 percent federal. I would be inclined to allocate time on a 50–50 basis, but it does appear that although the disability benefits program is entirely federal and the federal defendant was an indispensable party,

much of the relief plaintiffs sought required performance by the state. I conclude, therefore, that plaintiffs' efforts were directed more toward the state than the federal defendant, but not in the percentage they suggest (90 percent). I agree with plaintiffs, however, that the defendants' respective attorney time provides no point of reference for this analysis, in view of the fact that the federal defendant took the lead role in the defense and agreed to pay any fees awarded against the state defendant.[4]

■ With respect to the second phase of the litigation—the Ninth Circuit appeal-the state did not participate. The appeal only addressed attorney fees, and the battle was fought entirely between plaintiffs and the federal defendant. The appeal did, however, result in a ruling adverse to the state position, that plaintiffs are entitled to market rate fees against the state; yet, at the same time it was clear that the federal defendant would be the only responsible party. Consequently, I cannot reasonably allocate all of plaintiffs' time in the appeal to the federal defendant, nor can I attribute 65 percent to the state. In view of the issues raised and resolved in the appeal and cross-appeal, I find that the appropriate allocation as between the two defendants for time spent on the appeal is 75 percent federal and 25 percent state.[5]

■ Finally, with respect to the third phase of the litigation—the present proceedings on remand—there no longer is any pretense that the state is involved in any way. The only issue at this point is

4. The state often took a "me too" approach, in which it agreed with the federal defendant in hearings and in written materials. Thus, it is no surprise that the federal defendant's attorney time significantly exceeded the state defendant's.

5. I am somewhat troubled by this allocation, because the appeal focused only on attorney

fees, all of which are to be paid by the federal defendant. In this respect, plaintiffs' efforts in the appeal were directed solely against the federal defendant. Because, however, the appeal also addressed plaintiffs' degree of success, I am not convinced that none of plaintiffs' effort was directed toward the state.

how much the *federal defendant* ultimately will be required to pay; the resolution of that issue depends on the findings I make concerning hours reasonably spent and allocation of time, in accordance with the Ninth Circuit's directions. Consequently, I find that 100 percent of plaintiffs' attorney time on remand is directed toward the federal defendant.

### b. *EAJA Rates*

My next task is to determine the appropriate hourly rates for each defendant. Before I begin this analysis, I address a preliminary matter.

 Plaintiffs propose that I should award enhanced EAJA rates, specifically, prevailing market rates, against the federal defendant by applying a "special factor" analysis. Of course, applying market rates to all of the approved hours would vastly simplify my work, but I decline to do so. With respect to fees incurred up to the appeal, I agree with defendant that the issue of enhancement is foreclosed by plaintiffs' failure to raise it on appeal. Plaintiffs assert that they had "no reason" to appeal the enhanced EAJA rate issue, but my original fee award did not award enhanced EAJA rates even though plaintiffs had requested them. In their cross-appeal, plaintiffs argued that this court's "sole error" was the failure to award market rates against the state defendant, and plaintiffs asked only that the "matter be remanded with instructions to render an award against the state defendants consistent with the standards of Section 1988." Brief for the Appellees/Cross Appellants, pp. 24, 30. The Ninth Circuit did precisely that and, as pertinent to the issue of enhancement, no more.

 Plaintiffs also contend that they should receive enhanced EAJA rates against the federal defendant for the appeal and for the remand petition. The requirements for enhanced fees, however, are not met in either of those phases of this litigation.[6] Special expertise in the field of social security or in class-action litigation was not required to pursue an appeal from an attorney fee award as flawed as the one in this case. I had good reasons for crafting the fee award as I did, and I had hoped, mistakenly, that the parties would accept it and turn their resources and abundant energies to performing under the settlement agreement. The award was a compromise award, not designed for close appellate scrutiny. The plaintiffs were satisfied, but the federal defendant chose to appeal.

Even less than the appeal, the present proceedings demand no special expertise or skills. All that is at stake is an award of attorney fees. Most of the relevant documents were created long ago or rehash arguments already made. Nothing about this proceeding warrants enhanced rates, and plaintiffs make no reasonable attempt to justify them.

In view of the above, I decline to award plaintiffs enhanced EAJA rates against the federal defendant for any phase of this litigation.

I now turn to the applicable EAJA rates. Departing from its own prior case law, which it viewed as not binding, the Ninth Circuit announced for the first time in this case that in determining the applicable EAJA rate, the district court must enhance the base rate by the consumer price index for urban consumers ("CPI U")

---

**6.** The three requirements for a "special factor" enhancement are: (1) the attorney must "possess distinctive knowledge and skills developed through a practice specialty"; (2) "those distinctive skills must be needed in the litigation"; and (3) "those skills must not be available elsewhere at the statutory rate." *Love v. Reilly,* 924 F.2d 1492, 1496 (9th Cir. 1991).

that is current in the year when the fee is earned. *Sorenson,* 239 F.3d at 1148–49. In this case, that means determining cost-of-living-enhanced EAJA rates for each year from 1991 through 2001.

The parties have been most helpful on this issue, and have agreed to the following rates for each of these years:

| | |
|---|---|
| 1991: | $109.32 |
| 1992: | $112.62 |
| 1993: | $115.94 |
| 1994: | $118.97 |
| 1995: | $122.32 |
| 1996: | $125.91 |
| 1997: | $128.83 |
| 1998: | $130.84 |
| 1999: | $133.70 |
| 2000: | $138.21 |
| 2001: | $140.54 |

Based on the parties' agreement to the above numbers, I have made no attempt to independently verify them.

#### c. *Market Rates*

Plaintiffs propose the following hourly "market rates" for each of the following attorneys:

| | |
|---|---|
| Timothy Baxter: | $200 |
| Tim DeJong: | $150 |
| Robert Stoll: | $350 |
| Lorey Freeman: | $200 |
| Peter James: | $150 |
| Steve Kanaga: | $200 |
| Steve Koch: | $150 |
| Kent Thurber: | $200 |
| Kathy Wilde: | $200 |
| Lane County: | $150 |

The federal defendant does not dispute these rates but instead has limited its opposition to the issue of enhancement under the EAJA. Consequently, I accept the above rates as established by the record.[7]

#### d. *The Calculations*

Before I turn to the actual calculations, I make two additional comments. First, despite my most diligent and dedicated efforts, I could not make my numbers perfectly match plaintiffs' numbers. The calculations below reflect my best effort to sort through the affidavits and to determine the hours and amounts claimed. I stated before and state again: "The mathematics may not be perfect, but these awards are substantial and are final, and I will not reconsider them merely to correct minor errors or omissions." May 5, 1999, Order, p. 3 n. 1.

Second, although the parties agreed to certain deductions for time not adequately documented, they did not specify in what year(s) those hours were incurred. Because I must account for the deductions in my calculations, I will select the largest billing year for each of the affected attorneys (Baxter, James, Kanaga, and Thurber).[8]

In the following calculations, the years 1991 through 1999 are subject to the 65/35 state/federal allocation, except as otherwise noted. The year 2000 is subject to the $25/75$ allocation; the year 2001 is subject

**7.** The Stoll, Stoll materials make brief reference to billings by attorneys other than Tim DeJong and by certain paralegals, but these hours are not well-documented and appear to be quite minimal. I decline to search the record for the necessary information and, consequently, disallow these limited amounts.

**8.** It should go without saying that all of Michael Punja's time remains disallowed.

to the 100 percent federal allocation. Applying the percentages and rates described above, I calculate attorney fees as follows:

| Timothy Baxter | | Allocation |
|---|---|---|
| 1991: | $ 1,816.78 | (7.02 state; 3.78 federal) |
| 1992: | $ 0 | (no hours claimed) |
| 1993: | $ 4,400.94 | (16.77 state; 9.03 federal) |
| 1994: | $ 30,431.68 | (115.25 state; 62.05 federal) |
| 1995: | $ 97,241.31 | (365.76 state; 196.94 federal) |
| 1996: | $ 46,388.63 | (173.23 state; 93.27 federal) |
| 1997: | $ 39,185.25 | (145.47 state; 78.33 federal) |
| 1998 [9]: | $105,687.35 | (390.78 state; 210.42 federal) |
| 1999: | $ 6,453.00 | (23.73 state; 12.77 federal) |
| 2000: | $ 737.56 | (1.2 state; 3.6 federal) |
| 2001: | $ 7,575.10 | (53.9 federal) |
| Total: | $339,917.60 | |

| Tim DeJong | | |
|---|---|---|
| 1995: | $ 736.64 | (3.41 state; 1.84 federal) |
| 1996: | $ 35.71 | (.16 state; .09 federal) |
| 1997: | $ 70.65 | (.33 state; .17 federal) |
| 1998: | $ 3,331.92 | (15.11 state; 8.14 federal) |
| 1999a [10]: | $ 12,676.32 | (57.1 state; 30.75 federal) |
| 1999b: | $ 9,623.59 | (17.46 state; 52.39 federal) |
| 2000: | $ 1,672.72 | (2.96 state; 8.89 federal) |
| 2001: | $ 10,877.80 | (77.4 federal) |
| Total: | $ 39,025.35 | |

| Robert Stoll | | |
|---|---|---|
| 1995: | $ 2,432.81 | (5.85 state; 3.15 federal) |
| 1996: | $ 271.57 | (.65 state; .35 federal) |

---

9. 70.9 hours deducted in 1998.

10. Tim DeJong and Robert Stoll billed time in 1999 on both the fee petition and the appeal.

As explained *supra*, these hours must be reimbursed differently. "1999a" represents fee petition time; "1999b" represents appeal time.

| | | |
|---|---|---|
| 1997: | $ 12,225.69 | (29.15 state; 15.7 federal) |
| 1998: | $ 33,847.47 | (80.5 state; 43.35 federal) |
| 1999a: | $ 4,484.74 | (10.63 state; 5.72 federal) |
| 1999b: | $ 3,802.45 | (5.06 state; 15.19 federal) |
| 2000: | $ 5,925.88 | (7.75 state; 23.25 federal) |
| 2001: | $ 7,385.38 | (52.55 federal) |
| Total: | $ 70,375.99 | |

Lorey Freeman

| | | |
|---|---|---|
| 1991: | $ 925.44 | (3.58 state; 1.92 federal) |
| 1992: | $ 0 | (no hours claimed) |
| 1993: | $ 810.25 | (3.09 state; 1.66 federal) |
| 1994: | $ 18,468.41 | (69.94 state; 37.66 federal) |
| 1995: | $109,260.39 | (410.96 state; 221.29 federal) |
| 1996: | $ 28,677.79 | (107.09 state; 57.66 federal) |
| 1997: | $ 30,684.43 | (113.91 state; 61.34 federal) |
| 1998: | $ 93,874.00 | (347.1 state; 186.9 federal) |
| 1999: | $ 6,668.43 | (24 state; 13.9 federal) |
| 2000: | $ 0 | (no hours claimed) |
| 2001: | $ 8,658.67 | (61.61 federal) |
| Total: | $298,027.81 | |

Peter James

| | | |
|---|---|---|
| 1995: | $ 4,981.08 | (23.08 state; 12.42 federal) |
| 1996 [11]: | $ 7,772.11 | (35.69 state; 19.21 federal) |
| 1997: | $ 3,949.75 | (18 state; 9.7 federal) |
| 1998: | $ 10,073.57 | (45.7 state; 24.6 federal) |
| 1999–2000 | $ 0 | (no hours claimed) |
| 2001: | $ 702.70 | (5 federal) |
| Total: | $ 27,479.21 | |

Steve Kanaga

| | | |
|---|---|---|
| 1994: | $ 2,694.74 | (10.2 state; 5.5 federal) |
| 1995 [12]: | $ 53,960.55 | (202.96 state; 109.29 federal) |

**11.** 60.7 hours deducted in 1996. **12.** 15.25 hours deducted in 1995.

| 1996: | $ 14,943.78 | (55.8 state; 30.05 federal) |
| 1997: | $ 20,214.20 | (75.04 state; 40.41 federal) |
| 1998: | $ 56,122.23 | (207.51 state; 111.74 federal) |
| 1999: | $ 7,292.80 | (26.81 state; 14.44 federal) |
| 2000: | $ 0 | (no hours claimed) |
| 2001: | $ 0 | (49.25 disallowed) |
| Total: | $155,228.30 | |

Steve Koch

| 1993: | $ 1,380.79 | (6.5 state; 3.5 federal) |
| 1994: | $ 16,794.14 | (78.45 state; 42.25 federal) |
| 1995: | $ 63,183.24 | (292.7 state; 157.6 federal) |
| 1996: | $ 17,837.63 | (81.9 state; 44.1 federal) |
| Total: | $ 99,195.80 | |

Kent Thurber

| 1992: | $ 6,691.97 | (25.68 state; 13.82 federal) |
| 1993: | $ 4,733.57 | (18.04 state; 9.71 federal) |
| 1994: | $ 22,519.10 | (85.28 state; 45.92 federal) |
| 1995 [13]: | $ 38,666.69 | (145.44 state; 78.31 federal) |
| 1996–98: | $ 0 | (no hours claimed) |
| 1999: | $ 1,502.75 | (5.53 state; 2.97 federal) |
| Total: | $ 74,114.08 | |

Kathy Wilde

| 1998: | $ 31,237.14 | (115.5 state; 62.19 federal) |
| 1999: | $ 265.20 | (.98 state; .52 federal) |
| Total: | $ 31,502.34 | |

Lane County

| 1998: | $ 1,218.00 | (5.52 state; 2.98 federal) |
| Total: | $ 1,218.00 | |

Additionally, Reba Sundberg claims 1,107 hours at $75 per hour, a total of $83,025.00. The federal defendant has not challenged this time or rate. Because the rate is below both the EAJA rate and the prevailing market rate, it is not necessary to allocate her time and the requested amount is allowed. Further, Lane County's claim for reimbursement of 138

---

**13.** 86 hours deducted in 1995.

hours of paralegal and law clerk time at $50 per hour is unchallenged, and the amount of this request, $6,900.00, is allowed.

To summarize the above, I make the following attorney, paralegal, and law clerk fee awards:

| | |
|---|---|
| Tim Baxter | $339,917.60 |
| Tim DeJong | $ 39,025.35 |
| Robert Stoll | $ 70,375.99 |
| Lorey Freeman | $298,027.81 |
| Peter James | $ 27,479.21 |
| Steve Kanaga | $155,228.30 |
| Steve Koch | $ 99,195.80 |
| Kent Thurber | $ 74,114.08 |
| Kathy Wilde | $ 31,502.34 |
| Lane County attys. | $ 1,218.00 |
| Reba Sundberg | $ 83,025.00 |
| Lane County misc. | $ 6,900.00 |

| | |
|---|---|
| Total fees: | $1,226,009.30 |
| -$5,000 | $1,221,009.30 |
| Plus costs: | $ 46,759.72 [14] |
| GRAND TOTAL | $1,267,769.02 |

#### e. *Interest*

Plaintiffs seek post-judgment interest on both the "state" and the "federal" hours. *See* 28 U.S.C. § 1961(a)(state); 28 U.S.C. § 2412(f)(federal). To simplify matters, plaintiffs agree to limit the period of interest accrual as to both defendants to the period from May 6, 1999, through April 6, 2001. The federal defendant does not dispute that post-judgment interest is available, nor does it dispute the interest rate plaintiffs set forth in their petition on remand, 4.727 percent. *See* Fee Petition on Remand, pp. 21–22; Federal Defendant's Opposition, p. 21. Accordingly, plaintiffs are entitled to interest on this award at the rate of 4.727 percent from May 6, 1999, through April 6, 2001.

### CONCLUSION

Plaintiffs' revised petition for attorney fees (# 260) is allowed in the following sums: $1,221,009.30 in attorney fees; $46,759.72 in costs; and post-judgment interest from May 6, 1999, through April 6, 2001, at the rate of 4.727 percent.[15]

IT IS SO ORDERED.

---

14. I allowed these costs in my original order, and that award has not been challenged. Plaintiffs do not appear to seek additional costs, or if they do, they have buried their request too well for the court to locate it.

"Judges are not ferrets!" *Nicholas Acoustics & Specialty Co. v. H & M Construction Co.,* 695 F.2d 839, 847 (5th Cir.1983).

15. I note with some irony that, not including the substantial additional fees incurred in the

appeal and on remand, my recalculations based on the Ninth Circuit's instructions yielded approximately $126,000 more, not less, in attorney fees awarded against the defendants.