Ken WEDRA,* Plaintiff,

v.

Dale THOMAS, Warden, Metropolitan Correctional Center, Defendant.

No. 79 Civ. 6311–CSH.

United States District Court, S.D. New York.

Oct. 24, 1985.

---

* The original caption named "Kenneth L. Payton and All Federal Protection Prisoners" as plaintiffs. Payton, as well as other original plaintiffs, left the unit and were replaced by, *inter* *alia*, Kenneth Wedra. At the time the case was settled, Wedra was the sole remaining plaintiff. The action was never certified as a class action.

Richard Ware Levitt, New York City, for plaintiff.

Rudolph W. Giuliani, U.S. Atty., New York City, for defendant; Carolyn L. Simpson, Asst. U.S. Atty., of counsel.

## MEMORANDUM OPINION
## AND ORDER

HAIGHT, District Judge:

Richard Ware Levitt, Esq., attorney for plaintiffs, moves this Court for an award of attorneys' fees under the Equal Access to Justice Act (the "Act"), 28 U.S.C. § 2412 *et seq.*, on the ground that his client was a prevailing party in litigation against the United States.[1] Levitt represented *pro bono* a group of inmates housed in "Unit 3," the federal witness security unit of the federal Metropolitan Correctional Center ("MCC") in New York, who challenged certain MCC legal and social visitation policies regarding that unit. He requests payment for 29.4 hours of work on this matter at a rate of $100 per hour for a total of $2,940.00. No request for costs is made.

Defendant does not contest plaintiff's right to recover attorneys' fees as a prevailing party in this action, but defendant does challenge both counsel's hourly rate and his entitlement to be paid for all time expended in connection with this action. Defendant asserts that Levitt should be paid no more than $75 per hour, the maximum rate permitted under the Act "unless the Court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). Defendant claims that Levitt has failed to justify a higher fee. Defendant further asserts that plaintiff prevailed on only three of his five claims and that therefore Levitt should be paid only for 60% of the total hours he spent on this litigation.

1. The Act passed Congress on October 21, 1980. 28 U.S.C. § 2412, after amendment, now reads in pertinent part:

"(a) Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title, but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States or any agency and any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. A judgment for costs when taxed against the United States shall, in an amount established by statute, court rule, or order, be limited to reimbursing in whole or in part the prevailing party for the costs incurred by such party in the litigation.

"(b) Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency and any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award."

\* \* \* \* \* \*

(d)(1)(2) "For the purposes of this subsection—

"(A) 'fees and other expenses' includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that (i) no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States; and (ii) attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.);

"(B) 'party' means (i) an individual whose net worth did not exceed $1,000,000 at the time the civil action was filed, (ii) a sole owner of an unincorporated business, or a partnership, corporation, association, or organization whose net worth did not exceed $5,000,000 at the time the civil action was filed, except that an organization described in section 501(c)(3) of the Internal Revenue Code of 1954 (26 U.S.C. 501(c)(3) ) exempt from taxation under section 501(a) of the Code and a cooperative association as defined in section 15(a) of the Agricultural Marketing Act (12 U.S.C. 1141(a) ), may be a party regardless of the net worth of such organization or cooperative association, or (iii) a sole owner of an unincorporated business, or a partnership, corporation, association, or organization, having not more than 500 employees at the time the civil action was filed; and

"(C) 'United States' includes any agency and any official of the United States acting in his or her official capacity."

The Act became effective on October 1, 1981.

A brief history of the litigation is required in order to evaluate the parties' positions.

The original plaintiffs in this action filed a complaint *pro se* on November 23, 1979, seeking a declaratory judgment, money damages and injunctive relief:

(1) permitting inmates in Unit 3 to confer privately with their attorneys without audial monitoring by MCC staff;

(2) permitting inmates' attorneys to enter the unit without being photographed;

(3) permitting visits to inmates by attorneys other than their counsel of record;

(4) permitting the family and friends of inmates to visit the unit without being photographed; and

(5) permitting inmates to have more than six friends or family members on their list of approved visitors.

After various proceedings, including the filing by defendant of a motion for summary judgment seeking dismissal of all of plaintiffs' claims, Mr. Levitt undertook to represent plaintiffs, at my request, in April 1982.

Shortly thereafter, he wrote to counsel for defendant in an effort "to identify and summarize our chief areas of concern...."[2] Levitt initially noted that "attorneys who are not of record may now utilize attorney-only visiting hours" so that the third claim in the complaint was no longer a live issue. He then summarized the plaintiffs' position on their first and fourth claims, expanding their first claim to encompass a request for added privacy in and no audial monitoring of social, as well as legal, visits. No mention was made of plaintiffs' second or fifth claims.

After extensive settlement negotiations, the parties entered into a Stipulation and Order of Settlement and Dismissal dated May 7, 1985. That Stipulation stated in pertinent part:

1. The parties agree to settle this action on the terms indicated:

a. Respondent agrees to complete and open within 30 days of the date of this Stipulation and Order an attorney-client conference room in Unit 3 of the Metropolitan Correctional Center—New York ("Unit 3"). The room shall be separate and apart from the social visiting room already operational within Unit 3 and will be available for use by attorneys and Unit 3 residents during normal attorney-client visiting hours.

b. Respondent further agrees that Unit 3 residents may meet with bona fide attorneys additional to their attorneys of records, so long as the attorney has been given clearance by the M.C.C.

c. Respondent reserves the right to photograph attorneys seeking to interview Unit 3 residents, but agrees that attorneys with proper identification will not be denied access to Unit 3 residents on the ground that photo-identification has not been completed.

d. There is no audial monitoring of conversations between attorneys and clients.

e. Respondent states that the current policy of the Metropolitan Correctional Center is to permit Unit 3 residents to include 13 persons on their visiting lists.

f. Respondent states it is the current policy of the MCC to keep all photographs of social visitors to Unit 3 secure and to permit access to said pictures only to authorized personnel.

This agreement grants plaintiff the full relief he sought in his first, third and fifth claims; grants him some concessions on his second claim and grants him no relief on his fourth claim other than an assurance that it is the MCC's policy to safeguard photographs of inmates' social visitors and to permit access to them only to authorized personnel.

**2.** See letter from Levitt to Assistant United States Attorney Nancy Friedman, dated May 13, 1982.

## A. *Apportionment*

◼ The United States makes no claim that it was not a party to the action, on the theory that Warden Thomas of the MCC was sued only in his individual capacity. *Cf. Saxner v. Benson,* 727 F.2d 669 (7th Cir.1984). Defendant does argue, however, that plaintiff has prevailed on only three of his five claims and consequently, that plaintiff may recover attorneys' fees only for the three successful claims. Defendant suggests that a strict mathematical apportionment is appropriate, permitting plaintiff to recover 60% of Levitt's total fees. This approach was expressly rejected by the Supreme Court in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Although the Court in *Hensley* held that as a general principle, a prevailing plaintiff may not recover attorneys' fees for legal services on unsuccessful claims, it stated that it is up to the trial court, in light of various considerations delineated in the opinion, "to identify specific hours that should be eliminated, or … simply reduce the award to account for the limited success." 461 U.S. at 436–37, 103 S.Ct. at 1941. But the Court explicitly rejected the mechanical mathematical formula advocated by defendant herein:

"We agree with the District Court's rejection of 'a mathematical approach comparing the total number of issues in the case with those actually prevailed upon.'
… Such a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors. Nor is it necessarily significant that a prevailing plaintiff did not receive all the relief requested. For example, a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time."

*Id.* at 435 n. 11, 103 S.Ct. at 1940 n. 11.

The focus of the Court, in exercising its discretion in this area, is on the results obtained by plaintiffs, and the degree to which the successful and unsuccessful claims are separable. *Id.* at 435, 103 S.Ct. at 1940. The Court explained:

"In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendants—often an institution and its officers, as in this case—counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.' *Davis v. County of Los Angeles,* 8 E.P.D., at 5049. The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.

"It may well be that cases involving such unrelated claims are unlikely to arise with great frequency. Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. See *Davis v. County of Los Angeles, supra,* at 5049. Litigants in good faith may raise alterna-

tive legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters."

*Id.* at 434–35, 103 S.Ct. at 1939–40 (footnotes omitted).

I consider the claims on which plaintiff was largely unsuccessful to involve a common core of facts with those upon which plaintiff was successful. All of plaintiff's claims were concerned with facilitating social and legal visitation in the unit with a minimum of intrusion on the part of the institution into the privacy of the inmates, their attorneys, and their social guests. In these circumstances, the suit "cannot be viewed as a series of discrete claims," *id.*, and it would be unreasonable to expect plaintiff's counsel to identify those hours allocable to work on the unsuccessful claims. *See, e.g., Citizens Council of Delaware County v. Brinegar,* 741 F.2d 584, 596 (3d Cir.1984) (sufficient interrelationship among essential claims justifies full award of fees without apportionment based on success or failure of particular legal theories); *American Academy of Pediatrics v. Heckler,* 580 F.Supp. 436, 439 (D.D. C.1984) (reduction in fee not justified where plaintiffs prevailed on issue central to case and less successful issues were integrally related to the central issue).

But that is not the end of the Court's inquiry. I must next consider the relationship between the results obtained by counsel and the amount of the fee award to determine if it is reasonable in the circumstances. In view of the fact that this constitutional challenge to institutional practices on behalf of a group of plaintiffs was settled on terms which granted plaintiffs most of the relief they sought in only 29.4 hours of plaintiff's counsel's time, I con-

clude that the amount of time claimed by Levitt is reasonable and even surprisingly low. I know not whether to ascribe that to plaintiff's counsel's powers of persuasion and efficient approach, or to the reasonableness and fair-mindedness of defense counsel. I suspect both should be given credit for achieving this satisfactory resolution of the lawsuit. In any event, it does not affect my finding that the amount of time expended by counsel was reasonable in relation to the result obtained. I will therefore award plaintiff compensation for all of Levitt's time expended in connection with this litigation—a total of 29.4 hours.

**B.** *Hourly Rate*

Levitt asserts that his attorneys's fees should be awarded at a rate of $100 per hour, rather than the ordinary statutory maximum of $75 per hour, because the cost of living in New York generally is higher than elsewhere and the cost of living has increased since Congress set the $75 per hour standard in 1980, to take effect in 1981. See fn. 4, *infra.* In support of his claim, Levitt has submitted two pages from the 1985 *Statistical Abstract of the United States* which contains charts and graphs prepared by United States government agencies reflecting various price indices. The most relevant graph shows an annual increase of 3.5% in the consumer price index in 1983, and 4% in 1984. However the 1984 figure appears to be based in part on 1983 figures.[3] This information is an insufficient basis upon which to make a finding regarding the appropriate cost of living increase for purchasing attorneys' services from 1981 to 1985.[4] To begin with, no data is submitted for the period June 1984 to present. In addition, the graph referred to encompass-

---

**3.** See Figure 16.2, n. 2, annexed to Levitt's letter to the Court of September 9, 1985.

**4.** The fee provision of the Act became effective October 1, 1981. Therefore the cost of living adjustment contemplated by the Act must refer to increases taking effect after that date. See *Action on Smoking and Health v. C.A.B.,* 724 F.2d 211 (D.C.Cir.1984), permitting an adjust-

ment for the rise in the cost of living only since the effective date of the Act. The court stated: "The $75 maximum presumably incorporated increases in the cost of living to [October 1, 1981]. We must assume that Congress believed that $75 in October 1981 dollars, ... was an appropriate fee cap." 724 F.2d at 218.

es all items in the consumer price index—goods as well as services.[5]

Levitt has submitted no evidence upon which the Court could find that the cost of living is higher in New York than in other locales. Furthermore, even if he had, I am not certain that such a geographical exception is permitted under the statute. Surely Congress was aware in enacting the attorneys' fees provisions of the wide disparity in fee rates between urban and rural areas; between the Northeast and the Midwest, etc.; yet Congress chose to set one uniform rate to be applied nationwide.

■ Given the lack of solid economic data submitted by counsel on the inflation issue, plaintiff's request for an award based on a rate higher than the $75 statutory maximum is denied. To rule otherwise would involve the Court in impermissible speculation. *See, Lonning v. Schweiker,* 568 F.Supp. 1079, 1085 (E.D.Pa.1983) (request for cost of living increase denied for failure to brief entitlement to increase, how it should be calculated or from what point in 1982 it should accrue).

In consequence, the United States must pay attorney's fees in the amount of $2,205.00.

I am not content to complete this discussion without observing that Mr. Levitt has rendered exemplary service to the inmates and to this Court. In a sensitive case, he achieved an excellent result with modest expenditure of time. If Mr. Levitt's fee application fell to be decided under, say, 42 U.S.C. § 1988, I would be inclined to grant him a bonus over his regular rates. However, § 1988 does not contain a fee cap, as does § 2412; and the latter statute "is ... like other statutes allowing recovery against the United States, a limited waiver of sovereign immunity and must be narrowly construed." *Unification Church v. Immigration and Naturalization Service,* 574 F.Supp. 93, 96 (D.D.C.1983).

## C. *Form of Order and Judgment*

■ The statute provides that attorney's fees may be awarded "to the prevailing party," § 2412(b); "party" is further defined in § 2142(d)(2)(B). A question arises—not addressed by counsel in the briefs—as to how payment should be directed in the case at bar. The population in Unit 3 of the MCC, a short-term facility, varies from time to time. None of the inmates, past or present, have actually paid fees to Mr. Levitt, who undertook their representation at the Court's request. While applications for fee allowances under the statute are nominally made in the names of plaintiff inmates, *Saxner v. Benson, supra,* it would in the circumstances of this case be foolish, if not imprudent, to direct that counsel's fees be paid directly to an inmate or inmates.

Accordingly I direct that the United States pay the sum of $2,205.00 to Richard Ware Levitt, Esq., as attorney for plaintiff, in full satisfaction of the United States' obligation under 28 U.S.C. § 2412 to plaintiff for costs and attorney's fees in this case.

If a judgment is necessary to effectuate expenditure of government funds, counsel may settle a judgment on notice for that amount, in favor of plaintiff and against defendant, but directing that payment in satisfaction thereof be made to Mr. Levitt.

It is SO ORDERED.

---

**5.** Although Figure No. 777, on the second page of Levitt's exhibits is broken down into catego-

ries of consumer prices such as "services," its data only covers the period 1980–1983.