**Kais H. Al JAWAD, Plaintiff,**

v.

**Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.**

**No. 04CV0246BTMBLM.**

United States District Court,
S.D. California.

May 13, 2005.

Alexandra T. Manbeck, Law Offices of Alexandra Manbeck, San Diego, CA, for Plaintiff.

Carol C. Lam, United States Attorney, Office of the U.S. Attorney, San Diego, CA, for Defendant.

Thomas C. Stahl, Assistant United States Attorney, Office of the U.S. Attorney, San Diego, CA, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

MOSKOWITZ, District Judge.

On November 23, 2004, the Court granted Plaintiff's motion for summary judgment and found that Plaintiff is disabled and entitled to social security benefits. The Court concluded that the decision of the Administrative Law Judge (ALJ), upholding the Commissioner's denial of benefits, was erroneous and not supported by substantial evidence in the record. On February 15, 2005, Plaintiff timely filed a motion for attorney's fees.[1] The government contends that the amount of attorney's fees requested should be reduced.

### I. DISCUSSION

Under the Equal Access to Justice Act ("EAJA"), the *prevailing party*, other than the United States, is entitled to attorney's fees unless the government's position was substantially justified or special circumstances exist that render the award of fees unjust. 28 U.S.C. § 2412(d)(1)(A). Plaintiff satisfies the statutory criteria and is therefore entitled to an award of attorney's fees.

### A. PREVAILING PARTY

As a threshold issue, the Court finds that Plaintiff is a "party" within the meaning of § 2412 because his net worth did not exceed $2,000,000.00 at the time the action was filed. *See* 28 U.S.C. § 2412(d)(2)(B). Indeed, the Court granted Plaintiff *in for-*

---

1. 28 U.S.C. § 2412 requires that a motion for attorney's fees be filed "within thirty days of final judgment in the action." 28 U.S.C. § 2412(d)(1)(B). Under this provision, a " 'final judgment' means a judgment that is final and not appealable." *Id.* § 2412(d)(2)(G). The Court's November 23, 2004 Order granting Plaintiff summary judgment became final and unappealable 60 days after it was entered. *See* FED R. APP. P. 4(a)(1)(B) (when a United States agency is a party, the notice of appeal may be filed within 60 days after the judgment or order is entered). Plaintiff timely filed the instant motion within 30 days of that date in accordance with § 2412(d)(1)(B).

*ma pauperis* status at the outset of this action.

Furthermore, Plaintiff is clearly the "prevailing party" in this case. The Court granted Plaintiff summary judgment, found him disabled, and ordered the award of social security benefits. *See Farrar v. Hobby*, 506 U.S. 103, 111–112, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) ("[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."). *See also id.* at 113, 113 S.Ct. 566 (finding that a "material alteration" of the parties occurs when the plaintiff becomes entitled to enforce a judgment).

### B. SUBSTANTIAL JUSTIFICATION AND SPECIAL CIRCUMSTANCES

The government bears the burden of demonstrating that its position was substantially justified or that special circumstances exist that make the award unjust. *See Yang v. Shalala*, 22 F.3d 213, 217 (9th Cir.1994) (citations omitted); *Grason Elec. Co. v. NLRB*, 951 F.2d 1100, 1103 (9th Cir.1991). The government does not urge upon the Court that its position was substantially justified or that special circumstances exist here. In any case, these exceptions do not apply in this action because the Court held that the ALJ's decision was erroneous and not based on substantial evidence in the record. (*See* Order dated November 23, 2004 at 12.) *Cf. Yang*, 22 F.3d at 217 (to demonstrate "substantial justification" the government "must prove that [its] position had a reasonable basis in both law and fact") (citations omitted); *Animal Lovers Volunteer Ass'n v. Carlucci*, 867 F.2d 1224, 1226 (9th Cir.1989) (finding no special circumstances because "[t]he litigation on the merits did not involve a close or novel question"); *United States*

*v. Gavilan Joint Comty. Coll. Dist.*, 849 F.2d 1246, 1249 (9th Cir.1988).

### C. REASONABLE ATTORNEY'S FEES

The award of attorney's fees under the EAJA must be reasonable. 28 U.S.C. § 2412(d)(2)(A). The EAJA specifically provides that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor ... justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Hours that are excessive, redundant, or otherwise unnecessary should be excluded from an award of fees. *Id.* at 434, 103 S.Ct. 1933.

#### 1. REASONABLE HOURS EXPENDED

Plaintiff has submitted a detailed declaration from his attorney, Alexandra Manbeck, delineating the hours she spent on this case. *See Hensley*, 461 U.S. at 433, 103 S.Ct. 1933 ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed."). Ms. Manbeck's declaration states that she spent a total of 50.25 hours on this case. (*See* Manbeck's Decl. at 5.) Ms. Manbeck additionally claims another 2.75 hours for researching and drafting her reply in support of Plaintiff's motion for attorney's fees. (*See* Reply at 10.) Thus, she claims a total of 53 hours billed on this case.

The government contends that Ms. Manbeck's hours are excessive and should be reduced by approximately one-half. Specifically, the government argues that the hours billed should be reduced because this case did not involve complex issues

and Ms. Manbeck was already familiar with the facts and administrative record. The Court is unpersuaded.

To begin with, the Court finds Ms. Manbeck's itemized statement of billable hours adequate and declines to reduce the hours on this ground. *Cf. Hensley*, 461 U.S. at 433, 103 S.Ct. 1933 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly."). Furthermore, the Court finds the 53 hours billed reasonable in light of the relative complexity of this social security appeal and the level of success Ms. Manbeck achieved for Plaintiff. Indeed, the Court notes that Ms. Manbeck achieved a complete success for Plaintiff in this action. *See id.* at 440, 103 S.Ct. 1933 ("[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees."). This Court granted Plaintiff summary judgment, found Plaintiff disabled and reversed the Commissioner's denial of social security benefits. Thus, Plaintiff, through this action, secured his ultimate goal—social security benefits. *See id.* at 435, 103 S.Ct. 1933 ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. *Normally this will encompass all hours reasonably expended on the litigation,* and indeed in some cases of exceptional success an enhanced award may be justified.") (emphasis added); *Sorenson v. Mink,* 239 F.3d 1140, 1147 (9th Cir.2001). The 53 billable hours were reasonably expended in this case and the Court will award attorney's fees based on that amount.

### 2. COST-OF-LIVING ADJUSTMENT

Ms. Manbeck contends that her hourly rate should be enhanced due to an increase

in the local San Diego cost-of-living. The government does not oppose an upward adjustment; however, it argues that Ms. Manbeck incorrectly used the March 1996 *national* consumer price index for urban consumers ("CPI–U") as the baseline instead of the CPI–U for the San Diego area in calculating the cost-of-living adjustment.

The Court may, in its discretion, adjust the $125.00 statutory cap to compensate for an increase in the cost-of-living for the year in which the attorney's fees were earned. *See* 28 U.S.C. § 2412(d)(2)(A); *Sorenson,* 239 F.3d at 1148–49. In *Sorenson,* the Ninth Circuit clearly laid out the formula to determine the hourly enhancement due to an increase in the cost-of-living: multiply the EAJA rate cap by the current CPI–U for the year in which the fees were earned, then divide the product by the CPI–U in the month the cap was imposed (March 1996). The quotient is the enhanced hourly rate.[2] *See id.* at 1149 (citing *Ramon–Sepulveda v. INS,* 863 F.2d 1458, 1463 (9th Cir.1988)). The United States Department of Labor, Bureau of Labor Statistics ("BLS") compiles and publishes the CPI–U data.[3]

In order to properly calculate the award of attorney's fees under the EAJA, the Court must first examine two separate but related issues that have not been squarely addressed in the Ninth Circuit: (1) whether a single CPI–U source must be uniformly applied throughout the formula for both the baseline CPI–U and the present CPI–U variable (for the year in which the fees were earned); and (2) which index source, the national, regional or local CPI–U, should be used to calculate the cost-of-living adjustment.

---

2. As an equation, the formula reads: (Statutory Cap × Present CPI–U) / (March 1996 Baseline CPI–U) = Adjusted Hourly Rate.

3. *See generally* United States Department of Labor, Bureau of Labor Statistics, *Consumer Price Indexes, available at* http://www.bls.gov/cpi/home.htm (last visited May 3, 2005).

### a. UNIFORM APPLICATION OF A SINGLE CPI–U SOURCE

■ Ms. Manbeck purports to use the March 1996 *national* CPI–U as her baseline against the present *San Diego* CPI–U to account for the increased cost-of-living. Under this application, Ms. Manbeck would receive a glaring windfall. The March 1996 national CPI–U (155.7) is lower than the San Diego CPI–U for the same time period (159.8).[4] Furthermore, the present San Diego CPI–U for 2004 (212.8) is much higher than the national CPI–U for 2004 (188.9).[5] Thus, under Ms. Manbeck's computation, she would receive the benefit of a reduced baseline amplified by a greater San Diego CPI–U for 2004. By switching from the national CPI–U to the local CPI–U within the same equation, Ms. Manbeck artificially inflates the cost-of-living adjustment for the given time period. Indeed, applying inconsistent sources for the CPI–U variables necessarily distorts the actual pro rata increase in the cost-of-living. In essence, Ms. Manbeck's application compares apples to oranges. This is unacceptable when a consistent, uniform source is available for both the baseline CPI–U and the present CPI–U variables in the formula.

The Court acknowledges that other courts in the past have applied inconsistent sources for the CPI–U variables under the formula. *See. e.g., Hai Huynh v. Barnhart,* No. 03CV0340–K (LSP) at 8 (S.D.Cal. Mar. 3, 2004) (order granting motion for attorneys' fees) (applying the March 1996 national CPI–U of 155.7 with the local San Diego CPI–U of 203.8 for the first half of 2003); *Allegheny Bradford Corp. v. United States,* 350 F.Supp.2d 1332, 1339 (CIT 2004) (applying the March 1996 national CPI–U baseline with the 2002 Northeast Urban Areas regional CPI–U). However, these cases neglected to recognize and examine the problem of inconsistently applying the national CPI–U and then switching to the local/regional CPI–U within the formula to calculate the cost-of-living adjustment.[6]

---

**4.** *Compare* United States Department of Labor, Bureau of Labor Statistics, *Consumer Price Index—All Urban Consumers: U.S. City Average. All items. Not Seasonally Adjusted, Base Period 1982–84=100,* available at http://data.bls.gov/ PDQ/outside.jsp? survey=cu (last visited May 3, 2005) (listing the national CPI–U for March 1996 as 155.7), *with id. Consumer Price Index—All Urban Consumers: San Diego. CA, All items, Not Seasonally Adjusted, Base Period 1982–84=100* (listing the San Diego CPI–U for the first half of 1996 as 159.8). The BLS only computes the local San Diego CPI–U for the first and second half of each year. *See id.* Thus, the San Diego CPI–U for the first half of 1996 (159.8) serves as the closest baseline for March 1996 when Congress set the hourly rate cap.

**5.** *See id. Consumer Price Index—All Urban Consumers: San Diego, CA, All items, Not Seasonally Adjusted, Base Period 1982–84=100,* available at http://data.bls.gov /PDQ/outside.jsp?survey=cu (last visited May 3, 2005). In her calculation, Ms. Manbeck apparently applies the San Diego CPI–U for the first half of 2004 as the present CPI–U variable, despite the fact that she billed hours in the second half of 2004 and the first months of 2005. (*See* Manbeck's Decl. at 5; Pl.'s Reply at 10.) Nonetheless, the San Diego CPI–U for the first half of 2004 (211.4) is greater than the corresponding national CPI–U for the first half of 2004 (187.6). *See Id.*

**6.** *Cf. Sorenson,* 239 F.3d at 1149 ("[T]hose opinions neither discussed the question of which CPI–U should be used nor considered the issue of sovereign immunity from prejudgment interest. Rather, they simply used the current CPI–U without explanation. Such unstated assumptions on non-litigated issues are not precedential holdings binding future decisions.") (internal quotation marks omitted); *Estate of Magnin v. Comm'r,* 184 F.3d 1074, 1077 (9th Cir.1999) ("When a case assumes a point without discussion, the case does not bind future panels."). It is also important to note that neither *Hai Huynh* or *Allegheny Bradford* are binding precedent on this Court.

Although the Ninth Circuit has not expressly held that a single index source must be used for both CPI–U variables, most cases within the Ninth Circuit have consistently applied a uniform source throughout the formula. *See, e.g., Russell v. Sullivan,* 930 F.2d 1443, 1446 (9th Cir. 1991) (uniformly applying the national index for both the baseline and present CPI–U figures in the formula); *Animal Lovers Volunteer Ass'n, Inc. v. Carlucci,* 867 F.2d 1224, 1227 n. 2 (9th Cir.1989) (same); *Ramon–Sepulveda v. INS.,* 863 F.2d 1458, 1463 (9th Cir.1988) (same); *Phayboun v. Sullivan,* No. S–90–225 EJG/ PAN, 1992 WL 247012, at *19 (E.D.Cal. Sept. 4, 1992) (same); *Poole v. Rourke,* 779 F.Supp. 1546, 1570 n. 19 (E.D.Cal.1991) (same); *Stewart v. Sullivan,* 810 F.Supp. 1102, 1107 (D.Hawai'i 1993) (same); *Haines v. Apfel,* No. CV–98–1320–ST, 1999 WL 985131, *1 (D.Or. Oct. 12, 1999) (same). Likewise, most out-of-circuit cases consistently apply a single CPI–U source for both variables as well. *See. e.g., United States v. Eleven Vehicles,* 966 F.Supp. 361, 367 n. 5 (E.D.Pa.1997) (uniformly applying the national index throughout the formula); *California Marine Cleaning v. United States,* 43 Fed. Cl. 724, 734 n. 8 (Fed.Cl.1999) (same); *Cox Constr. Co. v. United States,* 17 Cl.Ct. 29, 37 (1989) (uniformly applying the local index); *Mannino v. West,* 12 Vet.App. 242, 243 (Vet.App.1999) (same).

Addressing this issue head on, the Court finds it improper to switch from a national CPI–U to a local/regional CPI–U within the same calculation. Failure to match the baseline CPI–U with the present CPI–U source will render the formula's computation of the pro rata increase in the cost-of-living hopelessly inaccurate. Without consistency in the source of the consumer price index variables, the potential to unfairly load the formula one way or the other is dangerously high. This is evident simply by running the numbers in this case through the formula. Under Ms. Manbeck's inconsistent application, she would be entitled to an hourly rate of $169.72.[7] However, under a uniform application using the *local San Diego* source for both CPI–U variables, the hourly rate is $165.36.[8] Under a uniform application using the *national* source for both CPI–U variables, the hourly rate is $150.61.[9] In terms of dollar value, the difference here increases exponentially with the number of hours billed. *Cf. Dewalt v. Sullivan,* 963 F.2d 27, 28 (3d Cir.1992) ("Although the dollar amount in dispute in this case is not great, appellant, understandably, seeks a definitive ruling because of the aggregate impact of attorney's fee awards in other similar cases.").

Ultimately, requiring a uniform source for both CPI–U variables will not only ensure a fair result, it will provide the most accurate and realistic analysis of the

---

7. As noted above, Ms. Manbeck only applies the San Diego CPI–U for the first half of 2004 (211.4) as the present CPI–U variable, even though she billed hours beyond that time period. *See supra* note 5. Thus, the equation for Ms. Manbeck's calculation reads: $(125 \times 211.4)/(155.7) = 169.72$.

8. To maintain consistency in the Court's example, this result, as well, comes from applying the San Diego CPI–U for the first half of 2004 as the present CPI–U variable. The equation reads: $(125 \times 211.4)/(159.8) = 165.36$.

9. Again, to maintain consistency in the example, the Court arrives at this result by applying the national CPI–U for the first half of 2004 as the present CPI–U variable. The equation reads: $(125 \times 187.6)/(155.7) = 165.36$. *See* United States Department of Labor, Bureau of Labor Statistics, *Consumer Price Index—All Urban Consumers: U.S. City Average, All items, Not Seasonally Adjusted, Base Period 1982–84=100, available at* http:// data.bls.gov/ PDQ/outside.jsp? survey=cu (last visited May 3, 2005) (listing the national CPI–U for the first half of 2004 as 187.6).

actual increase in the cost-of-living. Accordingly, the Court holds that whichever CPI–U source is used to determine the cost-of-living adjustment, it must be used consistently for both CPI–U variables throughout the formula. Otherwise, the formula's calculation of the cost-of-living adjustment is simply inaccurate and renders the formula itself untrustworthy.

### b. THE NATIONAL INDEX VERSUS THE LOCAL AND REGIONAL INDEXES

■  As demonstrated above, the difference in the adjusted hourly rate can vary substantially depending on which index source is used consistently in the formula. Thus, the Court must now decide which source should be uniformly used for the CPI–U variables.

### i. CASE LAW APPLYING THE NATIONAL INDEX

The Ninth Circuit has not explicitly held that the national index must be used over the local/regional indexes or vice versa to determine the cost-of-living adjustment under the EAJA. However, the same published Ninth Circuit court of appeals and district court cases that apply a single source for both CPI–U variables in the formula, all apply the *national* index. *See Russell*, 930 F.2d at 1446 (uniformly applying the national index for both the baseline and current CPI–U figures in the formula); *Carlucci*, 867 F.2d at 1227 n. 2 (same); *Ramon–Sepulveda*, 863 F.2d at 1463 (same); *Phayboun*, 1992 WL 247012, at *19 (same); *Poole*, 779 F.Supp. at 1570 n. 19 (same); *Stewart*, 810 F.Supp. at 1107

(same); *Haines*, 1999 WL 985131, at *1 (same).[10]

Other federal courts as well apply the national index over the local/regional indexes in the formula. *See. e.g., United States v. Eleven Vehicles*, 966 F.Supp. 361, 367 n. 5 (E.D.Pa.1997) (applying the national CPI–U because the attorney performed legal services in separate areas which had different CPI–U figures); *Eames v. Shalala*, No. 81–CV–0483E, 1994 WL 520972, at *4 (W.D.N.Y. Sept. 22, 1994) (using the national index "because there is insufficient difference between the local and the national indices to necessitate a local calculation and because testimony has been offered to the effect that the national index is less likely to contain error"); *Nat'l Law Ctr. on Homelessness & Poverty v. United States Dep't of Veterans Affairs*, 799 F.Supp. 148, 157 n. 10 (D.D.C. 1992) (applying the national CPI–U because the local index was only published every other month, and less often in most other American cities); *Ortiz v. Chater*, No. 95 CV 3126 ERK, 1997 WL 50217, at *5 (E.D.N.Y. Jan. 30, 1997) (applying the national index and noting that the Second Circuit had not "specified whether a national or local cost-of-living adjustment should be used").

### ii. CASE LAW APPLYING THE LOCAL AND REGIONAL INDEXES

Looking at federal case law as a whole, the Court notes that there is contrary authority which applies the local/regional indexes over the national index to determine the cost-of-living adjustment. *See Mannino v. West*, 12 Vet.App. 242, 243 (Vet.App.1999) (recognizing that there is a "split of authority on this question" of which CPI–U source should control).[11]

---

10.  *But cf. Faulkner v. Bowen*, 673 F.Supp. 1549, 1551 (D.Or.1987) (apparently adjusting the hourly cap to "account for 14% inflation in the *Portland area* since November 1981") (emphasis added). However, the court in *Faulkner* does not show its math or list the exact figures used, so it is not perfectly clear whether the court actually applied the local

Portland CPI–U source to calculate the cost-of-living adjustment. *See id.*

11.  *Cf. Baker v. Bowen*, 839 F.2d 1075, 1084 (5th Cir.1988) ("[T]he rule does not necessarily require that attorneys' fees awards track the cost-of-living index for the geographical area. Although this indicator is certainly sig-

The United States Court of Veterans Appeals has definitively held that the local CPI–U must be applied where there is one or, where there is none, the regional CPI–U must be applied to determine the cost-of-living adjustment. *Mannino*, 12 Vet. App. at 243. *Mannino* specifically tailored its holding to preclude a "one-size-fits-all, national CPI or a default to a national CPI rather than the applicable regional CPI." *Id.* The Veterans Appeals Court created this strict rule because it "believe[d] that the national policy underlying the EAJA (to encourage the representation of persons with claims against the United States . . .), is better served by tying the attorney-fee rate paid more closely to the actual CPI increase where the attorney works." *Id.* (citations omitted).

The United States Court of Federal Claims has mostly held that the local CPI–U should be used over the national CPI–U. *See, e.g., California Marine Cleaning v. United States*, 43 Fed. Cl. 724, 734 n. 8 (Fed.Cl.1999) (applying the national CPI–U but stating that "[i]deally, we would utilize an index tied to Washington, D.C., the city in which legal services were performed") (citations omitted); *Cox Constr. Co. v. United States*, 17 Cl.Ct. 29, 37 (1989) (applying the local San Diego CPI–U notwithstanding the government's argument that the national CPI–U figures should be used instead of the local figures because the Claims Court has national jurisdiction and its bar is a national bar). The court in *Cox Construction* reasoned that "in view of the diverse nature of various cities' and regions' economies, it is concluded that recognizing the cost of living increases actually experienced by the EAJA applicant is the fairer course." 17 Cl.Ct. at 37. *See also Kunz Constr. Co. v. United States*, 16 Cl.Ct. 431, 438 (1989) ("The CPI figures to be applied are those for the cost of living increases experienced in the locale where legal services were rendered, which in this case would be the San Antonio area."); *Keyava Constr. Co. v. United States*, 15 Cl.Ct. 135, 139 (1988) (applying the local San Francisco/Oakland CPI–U). The Court of Federal Claims, however, has not applied the local CPI–U in every instance. *See Doe v. United States*, 16 Cl.Ct. 412, 421 (Cl.Ct.1989) (applying the national index average consistently to both CPI–U variables in the formula); *California Marine Cleaning*, 43 Fed. Cl. at 734 n. 8 (applying the national CPI–U because the BLS had ceased compiling the relevant local/regional figures); *Griffin & Dickson v. United States*, 21 Cl.Ct. 1, 10 (1990) (applying the local rate for Dallas–Fort Worth but noting that the "Court can adjust fees based either on national or local Consumer Price Index (CPI) figures").

Other federal courts have passed casually over this issue applying the local CPI–U in part because that was the source used in the EAJA application. *See, e.g., Bacon v. Secretary of Health & Human Servs.*, 786 F.Supp. 434, 441 (D.N.J.1992) (applying the local New Jersey CPI–U as presented in the plaintiff's EAJA application); *Butts v. Bowen*, 775 F.Supp. 1167, 1173 (N.D.Ill. 1991) (applying the local Chicago CPI–U as presented by the plaintiff); *Wilkett v. Interstate Commerce Comm'n*, 844 F.2d 867, 875 (D.C.Cir.1988) (applying the local Washington, D.C. CPI–U source); *Nat'l Ass'n of Manufacturers v. United States Dept. of Labor*, 962 F.Supp. 191, 198 (D.D.C.1997) (applying the local Washington, D.C. and Atlanta CPI–U figures); *United States v. A Leasehold Interest in Prop.*, 789 F.Supp. 1385, 1394 (E.D.Mich. 1992) (applying the local Detroit–Ann Ar-

nificant, it may not be conclusive; such a decision is within the discretion of the district court.").

bor area CPI–U); *Fed. Deposit Ins. Corp. v. Addison Airport,* 733 F.Supp. 1121, 1126 (N.D.Tex.1990) (applying the local Dallas–Fort Worth CPI–U as presented by the plaintiff, but noting that "[t]he award need not necessarily track the cost-of-living index for a particular geographical area") (citing *Baker v. Bowen,* 839 F.2d 1075, 1084 (5th Cir.1988)); *Harkins v. Sullivan,* No. 85–1511–C, 1990 WL 193778, at *2 (D.Kan. Nov. 6, 1990) (applying the local Kansas City CPI–U).[12] The Court is unpersuaded by this line of cases and holds that the national index is the more appropriate source to determine the cost-of-living adjustment under the EAJA.

### iii. THE NATIONAL INDEX SHOULD CONTROL

Using the national CPI–U is not only consistent with the established trend in the Ninth Circuit, it is consistent with the plain language of 28 U.S.C. § 2412(d)(2)(A) itself. *See United States v. Ron Pair Enterprises,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) ("The task of resolving the dispute over the meaning of [a statute] . . . begins where all such inquiries must begin: with the language of the statute itself."). Section 2412(d)(2)(A)(ii) states in part that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in *the cost of living* . . . justifies a higher fee." (emphasis added). On its face, § 2412(d)(2)(A)(ii) generally references "*the* cost of living" not a local/regional cost-of-living. *Id.* (emphasis added).

*See Conn. Nat. Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.") (citations omitted). *Cf. Jones v. Espy,* 10 F.3d 690, 692 (9th Cir.1993) (holding that the more general CPI–U for all items applied because "if Congress had meant to permit upward adjustments based on the increased cost of legal services, it would have done so with greater specificity and clarity.") (citation omitted). This choice of language clearly implies a *national* cost-of-living adjustment that coincides with the *national* cap on attorney's fees. Moreover, a plain reading suggests that "the cost of living" language refers to a national scale especially since § 2412(d)(2)(A) created a *national* cap for attorney's fees notwithstanding the obvious fact that the cost-of-living and the prevailing market rate for legal services vary greatly on a regional and local level throughout the United States. *See Wedra v. Thomas,* 623 F.Supp. 272, 278 (S.D.N.Y. 1985) ("Surely Congress was aware in enacting the attorneys' fees provisions of the wide disparity in fee rates between urban and rural areas; between the Northeast and the Midwest, etc.; yet Congress chose to set one uniform rate to be applied nationwide.").[13]

Indeed, the BLS has been publishing the CPI–U data for individual cities since 1978.[14] Thus, when Congress created the

---

**12.** *See also* Gregory C. Sisk, *The Essentials of the Equal Access to Justice Act: Court Awards of Attorney's Fees for Unreasonable Government Conduct (Part Two),* 56 La. L.Rev. 1, 213 n. 864 (1995) (collecting cases); *Mannino,* 12 Vet.App. at 243–44 (collecting cases).

**13.** In *Wedra,* the court expressed that even if the plaintiff had submitted the local CPI–U figures, it was "not certain that such a geographical exception is permitted under the statute." 623 F.Supp. at 278.

**14.** *See* United States Department of Labor, Bureau of Labor Statistics, *BLS Handbook of Methods, Chapter 17, History of the Consumer Price Index, 1919 to 2003,* available at http://www.bls.gov /opub/hom/homch 17_d.htm (last visited May 3, 2005). The BLS originally published separate indexes for 32 cities in 1919. *Id.* In 1978, the BLS created the CPI–U and published CPI–U data nationally for 85 areas. *Id.*

EAJA in 1980, re-enacted it in 1985 and most recently amended it in 1996, Congress had every opportunity to expressly include local or regional language for determining the cost-of-living adjustment.[15] The fact that Congress did not insert any such language is telling here. *See Stewart*, 810 F.Supp. at 1107 (applying the national CPI–U instead of the local Honolulu CPI–U because "if Congress had wanted to allow for cost of living adjustments in a particular region or city, it could have done so in the statute"); *Wedra*, 623 F.Supp. at 278 (doubting that the local CPI–U could be used to determine the cost-of-living adjustment under the EAJA because it was contrary to Congressional intent). Moreover, "[n]othing in the text of the EAJA would lead one to believe that Congress contemplated that what began as a uniform national standard would gradually over time disintegrate into a hodge-podge of disparate rate caps, variously devised in isolation by every federal district court district." Gregory C. Sisk, *The Essentials of the Equal Access to Justice Act: Court Awards of Attorney's Fees for Unreasonable Government Conduct (Part Two)*, 56 La. L.Rev. 1, 139 (1995). Using a local/regional index would essentially transform Congress' carefully crafted national cap into a localized standard. *See id.* ("It would be a strange interpretation of a federal statute with nationwide application to assume that a uniform standard expressly set out in the text would devolve thereafter into a local standard,

varying from place to place according to regional economic trends.").

The adoption of the national index over the local/regional indexes is also more consistent with prior Ninth Circuit case law interpreting "the cost of living" language in more general rather than specific terms. In *Jones v. Espy*, the Ninth Circuit held that the general CPI–U (for all items) must be used over the more specific CPI–U (for legal services) to calculate the cost-of-living adjustment. 10 F.3d 690, 692 (9th Cir.1993). *Jones* interpreted the cost-of-living language as a "generalized phrase" and reasoned that using the more generalized CPI–U was therefore consistent with Congress' intent. *Id.* ("By using the generalized phrase 'cost of living,' Congress meant to permit upward adjustments based on the overall purchasing power of money and not on the ability of money to buy legal services.") (citations omitted). In the same way, adopting the national index over the specific local/regional indexes better matches the "generalized" cost-of-living language and Congress' intent to "permit upward adjustments based on the *overall* purchasing power of money." *Id.* (emphasis added). *See also* Sisk, *supra*, at 140 (using the national index "is also more consistent with the majority rule ... that the cost-of-living adjustment should be calculated by reference to the general CPI–U for all items rather than the particular index for a subcategory of legal services").[16]

---

15. *See* Pub.L. No. 96–481, Title II, § 208, 94 Stat. 2325, 2330 (1980) (creating the EAJA effective October 1, 1981); Pub.L. No. 99–80, § 6(a), 99 Stat. 183, 186 (1985) (re-enacting the EAJA and removing the sunset provision); Contract with America Advancement Act of 1996, Pub.L. No. 104–121, § 232(b), 110 Stat. 847, 863 (1996) (amending the EAJA to allow for a $125 national cap).

16. *See also* Sisk, *supra*, at 140 ("Both the rule requiring that increases in the cost of living

be measured by general movements in consumer prices (not by changes in the cost of legal services) and the adoption of a uniform national index (rather than a local index) reflect an understanding that the statutory rate cap was not designed to rise apace with increases in the market rates charged by attorneys."). Sisk opines that the "statutory rate cap is intended to stand separately as a ceiling on public expenditures, tracking national changes in the general cost of living." *Id.*

Applying the national index instead of the local/regional indexes also fulfills the overall purpose of the EAJA's statutory cap. The purpose of the national cap is essentially two-fold: (1) to protect the public fisc; and (2) to encourage challenges to agency action and provide a disincentive to prolong the litigation process. *See Dewalt v. Sullivan,* 963 F.2d 27, 29 (3d Cir.1992); *Pierce v. Underwood,* 487 U.S. 552, 572, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) ("Congress thought that $75 an hour was generally quite enough public reimbursement for lawyers' fees, whatever the local or national market might be."); Sisk, *supra,* at 139. Using the national index over the local/regional indexes serves both purposes. The national index ensures that the cost-of-living adjustment is uniform for all attorney's fee awards throughout the United States thereby equalizing the impact on the public fisc.[17] At the same time, using the national index encourages challenges to agency action because it ensures that attorney fee awards may be enhanced to reflect an increase in the cost-of-living.

Additionally, the Court notes that there will be instances where the local CPI–U is not readily available for specific areas.[18] *See, e.g., California Marine Cleaning,* 43

Fed. Cl. at 734 n. 8 (applying the national index because the BLS had "ceased compiling the [local] CPI–U data for the Washington metropolitan area shortly after it introduced a new index tied to the Washington–Baltimore area in November 1996"). Thus, if the local index controlled the cost-of-living adjustment, courts would have to default to either the regional or national index every time the local source was unavailable. This unnecessarily compounds the calculation and would produce inconsistent results as the regional and national indices vary from the local index. Areas that have a local index would be treated differently than those that do not, simply due to the fact that the BLS does not publish a local index for every geographical area. *Cf. Johnson v. Sullivan,* 919 F.2d 503, 505 (8th Cir.1990) ("Under ordinary circumstances . . . the cost of living affects each litigant within a judicial district to the same degree. Proper proof of an increase in that cost of living should result in consistent hourly fee awards in each case, rather than producing disparate fee awards from each court within the district or from different districts within this circuit."). Furthermore, even if the BLS compiles the local index for a certain area, the BLS only publishes the local

---

**17.** *See* Sisk, *supra,* at 139–40 ("Although the cost of living may vary from region to region or city to city, the impact upon the federal treasury of an increase in allowable fee awards against the federal government is the same, whether the federal dollar is paid out to an attorney in New York or in Kansas City. The statutory rate cap is best conceived of as a uniform ceiling upon fee award outlays, so that the impact upon the public fisc remains the same from year to year in constant dollars."). In his article, Sisk goes on to note that other federal statutes that affect that public fisc, like social security benefits and civil service retirement pay, use the *national* CPI–U source to determine the cost-of-living increase. *Id.* at 140 (citing 42 U.S.C. § 415(i)(D) (1988); 5 U.S.C. § 8331(15) (1994)).

**18.** Currently, the BLS only publishes the local CPI–U *monthly* for the three largest metropolitan areas (Chicago, Los Angeles and New York), *bi-monthly* for the next eleven largest metropolitan areas (Atlanta, Boston, Cleveland, Dallas, Detroit, Houston, Miami, Philadelphia, San Francisco, Seattle, and Washington), and *semi-annualy* for twelve smaller areas (Anchorage, Cincinnati, Denver, Honolulu, Kansas City, Milwaukee, Minneapolis, Pittsburgh, Portland, St. Louis, San Diego, and Tampa). *See* United States Department of Labor, Bureau of Labor Statistics, *Consumer Price Indexes: Guide to Available CPI Data, Published Areas, available at* http://www.bls.gov /cpi/cpifact8.htm (last visited May 3, 2005).

CPI–U data semi-annually or at best, bi-monthly.[19] *See, e.g., National Law Center*, 799 F.Supp. at 157 n. 10 (applying the national CPI–U because the local Washington, D.C. index is "only published every other month, and less often in most other American cities with a population of 200,-000 or more"). Inevitably then, there will be instances where a court must calculate the cost-of-living adjustment using the outdated local CPI–U from the prior first half of the year or even the prior year.[20]

The instant case is a perfect example. The BLS only publishes the local San Diego CPI–U annually and for the first and second half of each year.[21] Ms. Manbeck billed the majority of her hours in 2004. However, she also billed 4.75 hours in February of 2005 in connection with the instant motion and 2.75 hours in March of 2005 for the corresponding reply brief. (*See* Manbeck's Decl. at 5; Pl.'s Reply at 10.) The BLS has not issued the San Diego CPI–U for the first half of 2005 as it is only May. Thus, if the local index controlled, the Court would have to apply the outdated CPI–U for the second half of 2004 to the hours Ms. Manbeck actually billed in 2005. The resulting inaccuracy is obvious. In contrast, if the national index controlled, the Court could apply the annu-al CPI–U for 2004 (for the hours billed throughout 2004) and then apply an average monthly CPI–U for the hours Ms. Manbeck billed 2005. Moreover, by using the national CPI–U figures which are published each month, the Court could accurately apply an average year-to-date CPI–U figure for the hours billed in 2005.

Even more problematic, the Court can envision instances where using the local/regional CPI–U is not practical in certain cases. *See, e.g., Eleven Vehicles*, 966 F.Supp. at 367 n. 5 (uniformly applying the national CPI–U source because the claimant's counsel, an Atlanta lawyer, had performed legal services for claimant in both Atlanta and Philadelphia, which had different local CPI–U figures). Using the national CPI–U, which applies to the entire United States as a whole, avoids the availability and practicality problems inherent in using the local/regional indexes. The national index provides uniformity regardless of where the legal services were performed or the federal court sits.

Furthermore, the BLS itself reports that the local index has a much smaller sample size than the national index and is therefore subject to *substantially* more sampling and other measurement error.[22] As a result, the BLS states that the local

---

**19.** *See id.*

**20.** *See, e.g., Hai Huynh*, No. 03CV0340–K (LSP) at 8 (S.D.Cal. Mar. 3, 2004) (order granting motion for attorneys' fees). In *Hai Huynh*, the court applied the San Diego CPI–U for the first half of 2003 to all hours billed in the case, including hours billed in the second half of 2003 and the first half of 2004. *Id.* The court was forced to use the prior CPI–U figure for all the billable hours because, at the time, "no statistics for the second half of 2003 or the first half of 2004 [were] yet available." *Id.* The court did not consider using the national index for the present CPI–U variable, in part, because the government did not propose an "alternative method for selecting the appropriate CPI–U" given that the available San Diego CPI–U was outdated. *Id.*

**21.** *See supra* note 18.

**22.** *See* United States Department of Labor, Bureau of Labor Statistics, *Consumer Price Indexes: Frequently Asked Questions, 16. What Areas Indexes are Published and How Often*, available at http://www.bls.gov/ cpi/cpifaq.htm # Question_16 (last visited May 3, 2005) ("Each local index has a much smaller sample size than the national or regional indexes, and is, therefore, subject to substantially more sampling and other measurement error."). *See also* Sisk, *supra*, at 140 ("The volatility of local indices, reflecting the smaller sample size which makes them subject to more sampling and other measurement error, make use of the local measure unwise and inaccurate.") (footnotes omitted).

index is "more volatile" than the national index.[23] Thus, the national index serves as a more reliable source for the CPI–U data. In sum, applying the *national* index over the local/regional indexes provides the most accurate, uniform means to calculate *the* cost-of-living adjustment for a *national* cap set by Congress. The Court concludes that the national CPI–U is the more appropriate source to uniformly apply and must be used over the local/regional indexes in the formula.

### 3. SPECIAL FACTORS

Plaintiff's counsel, Ms. Manbeck, contends that her hourly rate should be further enhanced due to "special factors" that include her specialized expertise in the Vietnamese language, social security law, and the history and culture of refugees in general. The government contends that Ms. Manbeck is not entitled to an enhancement due to any alleged special factor. The Court agrees.

■ The Court may award a fee in excess of the $125 statutory cap if a "special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). The Ninth Circuit has established a three prong test to determine whether a special factor warrants a heightened fee award. Plaintiff must demonstrate: (1) that his attorney had developed a practice specialty or possesses distinctive knowledge and skills; (2) that the distinctive knowledge and skills are necessary to the litigation in question; and (3) that similar skills could not have been obtained at the statutory rate. *Pirus v. Bowen,* 869 F.2d 536, 541–42 (9th Cir.

1989); *Love v. Reilly,* 924 F.2d 1492, 1496 (9th Cir.1991). Plaintiff's counsel fails to satisfy this criteria.

■ Insofar as Ms. Manbeck speaks the Vietnamese language, she has not demonstrated that this distinctive knowledge or skill was necessary to the underlying litigation. *See id.* Indeed, as Ms. Manbeck herself notes, Plaintiff is from Iraq, not Vietnam. Plaintiff does not even allege that Ms. Manbeck actually spoke Vietnamese, or needed to, for purposes of this litigation. Thus, Ms. Manbeck's ability to speak Vietnamese, even fluently, is irrelevant to the litigation and cannot serve as grounds to increase her fee.

As to the claim that Ms. Manbeck has specialized expertise in refugee culture and historical background, the Court finds this wholly unsubstantiated. Ms. Manbeck fails to allege, much less demonstrate, that she possesses distinctive knowledge and skills in Plaintiff's Iraqi culture and historical background. Even if she had, Ms. Manbeck fails to demonstrate how this expertise was necessary to this litigation, other than the obvious fact that Plaintiff himself hails from Iraq. *See Pierce v. Underwood,* 487 U.S. 552, 572, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (holding that to qualify for a special factor increase the attorney must have "some distinctive knowledge or specialized skill needful for the litigation in question . . . .").

Finally, Ms. Manbeck claims distinctive knowledge and expertise in the area of social security law. However, Ms. Manbeck fails to show that similar skills could not have been obtained at the statutory rate. *See id.* (stating that "an extraordinary level of the general lawyerly knowl-

---

**23.** *See* United States Department of Labor, Bureau of Labor Statistics, *Consumer Price Indexes: Frequently Asked Questions, 16. What Areas Indexes are Published and How Often, available at* http://www.bls.gov /cpi/cpifaq.htm # Question_16 (last visited May 3, 2005) ("As

a result, local area indexes are more volatile than the national or regional indexes and BLS strongly urges users to consider adopting the national or regional CPIs for use in escalator clauses.").

edge and ability useful in all litigation" is not a special factor); *Pirus*, 869 F.2d at 541–42 ("It is not enough, however, that the attorney possess distinctive knowledge and skills. Those qualifications warrant additional fees only if they are in some way needed in the litigation and cannot be obtained elsewhere at the statutory rate."). Accordingly, the Court finds no special factors that warrant an increase in Plaintiff's award of attorney's fees.

### 4. CALCULATING THE AWARD OF ATTORNEY'S FEES

Because no special factors are present in this case, the award of attorney's fees need only be adjusted for the increase in the cost-of-living. To calculate the cost-of-living adjustment, the Court will uniformly apply the national CPI–U source throughout the formula for both the baseline and present CPI–U variables.

██ Ms. Manbeck billed 45.5 hours in 2004 and 7 hours in 2005 for a total of 53 hours reasonably billed on this case. (*See* Manbeck's Decl. at 5; Pl.'s Reply at 10.) Specifically, Ms. Manbeck billed 45.5 hours during 2004 in four separate months—January, May, July and November. To calculate the hourly rate separately for each month Ms. Manbeck billed in 2004, the Court would have to run the formula four different times to account for the varying monthly CPI–U figures. The Court finds this approach unnecessarily burdensome in calculating the applicable cost-of-living adjustment. When an attorney has billed hours in multiple months spread out over the span of a single year, and the annual CPI–U for that year is available, it is more practical to simply run the formula once applying the annual CPI–U for all the hours billed in that year. Indeed, the Ninth Circuit only requires that this Court "calculate the cost-of-living adjustment according to the CPI–U *for the year* in which the fees were earned." *Sorenson*, 239 F.3d at 1149 (emphasis added) (citing *Kerin v. United States Postal Serv.*, 218 F.3d 185, 194 (2d Cir.2000); *Masonry Masters, Inc. v. Nelson*, 105 F.3d 708, 711 (D.C.Cir. 1997); *Marcus v. Shalala*, 17 F.3d 1033, 1040 (7th Cir.1994)). *See also Perales v. Casillas*, 950 F.2d 1066, 1076 (5th Cir.1992) ("[W]e hold that cost-of-living adjustments under the EAJA must be made to reflect the appropriate rate *in the year* in which the services were rendered.") (emphasis added).[24] Accordingly, for the 45.5 hours billed in 2004, the Court calculates the hourly rate at $151.65.[25]

---

**24.** *Cf. California Marine Cleaning*, 43 Fed. Cl. at 734 (holding that "because attorney fees were approximately evenly distributed over these four months, [the court] will use the arithmetic mean of the CPI for these four months to adjust all attorney fees.") *Id.* (citing *Chiu v. United States*, 948 F.2d 711, 722 n. 5 [sic, n. 10] (Fed Cir.1991)). However, the court opined that "[t]heoretically, fees billed in each month from July through October should be adjusted based upon the CPI datum for each month." *Id.* (citing *Chiu*, 948 F.2d at 722).

In *Chiu*, the Federal Circuit held that the cost-of-living increase must be calculated from the baseline to *"the date* the services are performed." 948 F.2d at 722 (emphasis added). Nevertheless, *Chiu* expressly noted that it did ("not mean to preclude the court from

adopting, in an appropriate case, a single mid-point inflation adjustment factor applicable to services performed before and after that mid-point."). *Id.* at 722 n. 10 (citing *Keyava Constr. Co. v. United States*, 15 Cl.Ct. 135, 140 (1988)).

**25.** The Court calculates this figure by multiplying the statutory cap (125) by the national CPI–U for 2004 (188.9), the year in which the fees were earned, and then dividing the product (23,612.50) by the national CPI–U baseline at the time the amended cap was imposed (155.7). The quotient (151.65) represents the hourly rate with the appropriate cost-of-living adjustment. The equation reads: $(125 \times 188.9) / (155.7) = 151.653$. *See* United States Department of Labor, Bureau of Labor Statistics, *Consumer Price In-*

Ms. Manbeck also billed 7 hours in February and March of 2005.[26] (*See.* Manbeck's Decl. at 5; Pl.'s Reply at 10.) For these hours, the Court will apply the average year-to-date CPI–U for 2005 based upon the arithmetic mean of the CPI–U for January, February, and March of 2005.[27] The Court calculates the hourly rate at $154.06 for the 7 hours billed in 2005.[28]

To determine the total award of attorney's fees, the Court multiplies the hourly rate adjusted for the increase in the cost-of-living by the hours billed for the corresponding period and then adds the separate products together. The sum equals the grand total attorney's fees award. Under this calculation, Plaintiff is entitled to reasonable attorney's fees totaling $7,978.50.[29]

## II. CONCLUSION AND ORDER

The Court hereby awards Plaintiff attorney's fees in the amount of $7,978.50. The Clerk of Court shall enter judgment accordingly.

**IT IS SO ORDERED.**

---

dex—*All Urban Consumers: U.S. City Average, All items, Not Seasonally Adjusted, Base Period 1982–84=100,* available at http://data.bls.gov /PDQ/outside.jsp? survey=cu (last visited May 3, 2005) (listing the annual CPI–U for 2004 as 188.9 and the baseline CPI–U for March 1996 as 155.7).

26. Plaintiff's reply brief states that Ms. Manbeck spent 2.75 hours completing the reply brief on Plaintiff's motion for attorney's fees, but it does not state the exact month in which those hours were billed. (Pl.'s Reply at 10.) The government's opposition brief was filed on March 4, 2005. The reply brief was filed *nunc pro tunc* on March 14, 2005. Thus, the Court deduces that Ms. Manbeck billed these hours in March of 2005.

27. To determine the arithmetic mean, the Court adds the monthly CPI–U figures for January, February and March together and divides the sum by the total number of months, in this case three. The equation reads: (190.7 + 191.8 + 193.3) / (3) = 191.933. *See* United States Department of Labor, Bureau of Labor Statistics, *Consumer Price Index—All Urban Consumers: U.S. City Average, All items, Not Seasonally Adjusted, Base Period 1982–84=100,* available at http://data.bls. gov/PDQ/outside. jsp?survey=cu (last visited May 3, 2005) (listing the CPI–U for January, February and March of 2005 as 190.7, 191.8 and 193.3 respectively). Accordingly, the Court will apply an average year-to-date CPI–U of 191.9 to determine the cost-of-living adjustment for the 7 hours billed in 2005.

28. The equation reads: (125 × 191.9) / (155.7) = 154.062. *See id.*

29. The equation reads: (45.5 × 151.65) + (7 × 154.06) = 7,978.495. The Court rounds this number up to 7,978.50.